IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| JACKIE SCOTT, on behalf of the UNITED STATES OF AMERICA, and STATE OF IOWA, | ) ) ) ) | |
| | ) | Civil Action No. 3:13-cv-00102 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| COMMUNITY CARE, INC., WILLIAM M. BONNES, and ANGELA GANZER-BOVITZ, | ) ) ) ) | SETTLEMENT AGREEMENT |
| Defendants. | ) ) | |

## A. PARTIES

1.      This Settlement Agreement ("Agreement") is entered between and among the United States of America, acting through the United States Department of Justice ("DOJ") (the "United States"); the State of Iowa (the "State"); the Plaintiff, Jackie Scott, (the "Relator"); the Corporate Defendant, Community Care, Inc., ("CCI"); and the State court-appointed Receiver (the "Receiver"), (hereafter collectively referred to as "the Parties"), by and through their counsel.

## B. RECITALS

2.      CCI is a business incorporated under State law for the purpose of operating Residential Care Facilities ("RCF"). CCI is a provider authorized under the Medicaid program ("Medicaid"), Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, to present claims for Day Habilitation Services and other services designed to assist individuals with functional deficits, including deficits resulting from chronic mental illness, to obtain skills needed to live and work successfully in home or community-based environments. CCI's business is

headquartered in the Southern District of Iowa, and CCI has operated RCF's located in both the Northern and Southern Districts of Iowa.

3.     On September 24, 2013, Relator filed a qui tam action in the United States District Court for the Southern District of Iowa ("the Court") captioned *Jackie Scott, on behalf of the United States of America vs. Community Care, Inc., et al.*, Civil Action No. 4-13-cv-00408, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) ("FCA"). On February 5, 2014, Relator amended her Complaint (the "Relator's Action") joining the State as a Plaintiff, and adding to the fraud allegations by references to provisions of the State False Claims Act, Iowa Code Ch. 685 ("State FCA").

4.     The Relator's Action alleges fraud in CCI's billing for Day Habilitation Services, in that, (a) the services were little more than basic care and supervision of the RCF residents; (b) such services were already fully reimbursed by the State through Iowa Medicaid Enterprise ("IME") upon CCI's billing for residential care; (c) to the extent CCI did provide services that qualified as Day Habilitation Services, CCI was systematically inflating the purported time spent on such services and billing IME, not for services rendered, but based solely on the number of days that a resident lived in a CCI RCF; (d) CCI supervisors instructed CCI staff to create false documentation to support these false claims presented to IME. According to IME, CCI has billed Medicaid for these and other related services beginning in fiscal year 2003, and continuing into fiscal year 2014 (the "Relevant Time"). This conduct is hereafter collectively referred to as the "Covered Conduct".

5.     On or about March 31, 2014, the State of Iowa filed a separate action in the Iowa District Court for Polk County ("State Court"), captioned *Department of Human Services v. Community Care, Inc.*, No. EQCE076274, ("State's Collateral Action"), seeking emergency

relief under Iowa Code § 249A.44 (Supp. 2013). The State Court granted the State's application for emergency relief with the consent of CCI.

6.    The State intervened in the Relator's Action by Notice filed on April 7, 2014.

7.    On May 15, 2014, the State, pursuant to Iowa Code § 249A.44(3), applied for and, with the consent of CCI, obtained an Order appointing a receiver in the State's Collateral Action. The Receiver has been ordered to acquire and liquidate the assets of CCI, and account therefor with the State Court.

8.    The United States elected to not intervene in the Relator's Action by Notice filed on July 28, 2014.

9.    On October 24, 2014, the Relator and the State filed a Motion to Enter Consent Decree in the Relator's Action. The Motion was accompanied with a Consent Decree signed by the Relator, the State, the Receiver and CCI. The United States was not a party to any negotiations or agreements preceding the filing of the Motion and the Consent Decree.

10.    The United States notified counsel for the Relator, the State, the Receiver and CCI of its objections to the Motion and the Consent Decree. The Parties have resolved the objections, leading to the negotiated terms of this Agreement.

## C. TERMS AND CONDITIONS

11.    This Settlement Agreement is an admission of liability by CCI, and is a concession that the claims of the United States, the State of Iowa, and the Relator are well founded. This admission and concession by CCI is not an admission as to a certain sum of damages under the FCA and/or the State FCA.

3

12. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement to cover Relator's reasonable expenses, attorneys' fees and costs, and to pay Relator's damages for wrongful employment termination by CCI under 31 U.S.C. § 3730(h).

13. To avoid delay, uncertainty, inconvenience, and expense of protracted litigation of the claims raised in the Relator's Action, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows.

14. CCI agrees to entry of a judgment ("the Judgment") in favor of the United States, the State, and the Relator in a total amount of Nine-Million One-Hundred-Eighty-Four-Thousand Seventy-Eight Dollars ($9,184,078) ("Maximum Aggregate Settlement Amount").

15. The United States' share of the Maximum Aggregate Settlement Amount will be Four-Million Eight-Hundred-Seventy-Eight-Thousand Two-Hundred-Fifteen Dollars ($4,878,215) ("United States' Share").

16. The United States and the Relator agree that the Relator's Share should be 27.5% of all recoveries by the United States that are obtained to satisfy the United States' Share.

17. CCI agrees to the entry of a judgment from the Maximum Aggregate Settlement Amount in favor of the State in the amount of Four-Million One-Hundred-Twenty-Two-Thousand One-Hundred-Seventy-Four Dollars ($4,122,174) ("State's Share").

18. The State and the Relator agree that the Relator's Share should be 20% of all recoveries by the State that are obtained to satisfy the State's Share.

19. The Relator, the United States, and the State agree that, in satisfaction of Relator's claims for (a) reasonable expenses, attorneys' fees and costs, and (b) retaliatory discharge by CCI, the Relator shall receive 2% of all recoveries to the United States and the State that are obtained to satisfy the Maximum Aggregate Settlement. Depending upon the amount of the

recoveries to the United States and the State, the maximum amount that is potentially available to satisfy the Relator's attorneys' fees and costs and retaliatory discharge claims is One-Hundred-Eighty-Three-Thousand Six-Hundred-Eighty-Nine Dollars ($183,689).

20.    The parties agree that the total amount of the Medicaid payments administratively withheld by the State shall be retained in the Federal Medicaid Trust Fund and in the analogous State trust fund, respectively.  Upon execution of this Agreement, the Court's acceptance of its terms and conditions, and as soon as feasible thereafter, the State and the United States shall, with notice to the secured creditors of CCI, seek an Order from the Court to distribute these previously-withheld Medicaid payments in the manner described in ¶ 23 below.

21.    As soon as is feasible after the execution of this Agreement and the Court's acceptance of its terms and conditions, and after the Receiver has marshalled and liquidated the assets owned by CCI, the Receiver shall make his final accounting to the State Court and deposit any cash owned by CCI (including the proceeds of the sale of any real and personal property) with the Iowa District Clerk of Court. As soon as is feasible thereafter, the State, CCI and the Relator will seek an Order from the State Court directing that all of CCI's assets, other than any assets that are needed to satisfy any creditors (such as the Receiver) with priority over the interests of the Medicaid program, shall be applied to payment of the Judgment ("State Order").

22.    The total aggregate amount that the courts, referenced in ¶¶ 20 and 21 above, allow to be used to satisfy the Judgment, after all appeals have been exhausted, are hereby collectively referred to as the "Disbursable Aggregate Settlement Amount."

23.    The Disbursable Aggregate Settlement Amount shall be disbursed as follows: 38.5 percent shall be disbursed to the United States ("United States' Percentage"), 35.9 percent shall be disbursed to the State of Iowa ("State's Percentage"), and 25.6 percent shall be disbursed

to the relator ("Relator Percentage"). These disbursements are intended to allocate the United States' Share, the State's Share, and the amount attributable to the Relator's claims, as set forth in ¶¶ 14-19 above.

### E. Releases and Exceptions

24.    Subject to the exceptions in ¶ 27 (concerning excluded claims) below, conditioned upon the entry of the State Order, and conditioned upon the disbursements of the United States' Percentage and of the State's Percentage of the Disbursable Aggregate Settlement Amount, and subject to ¶ 37 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States shall release CCI, together with its current and former parent corporations; direct and indirect subsidiaries; related corporations; divisions; current or former owners; directors, affiliates, and officers, agents, servants, and employees, except William M. Bonnes and Angela Ganzer-Bovitz; and the successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

25. Subject to the exceptions in ¶ 27 (concerning excluded claims) below, conditioned upon the entry of the State Order, and conditioned upon the disbursements of the United States' Percentage and of the State's Percentage of the Disbursable Aggregate Settlement Amount, and subject to ¶ 37 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the State of Iowa agrees to release CCI, together with its current and former parent corporations; direct and

6

indirect subsidiaries; related corporations; divisions; current or former owners; directors, affiliates, and officers, agents, servants, and employees, except William M. Bonnes and Angela Ganzer-Bovitz; and the successors and assigns of any of them, from any civil or administrative monetary claim the State has for the Covered Conduct under the Iowa False Claims Act, Iowa Code chapter 685; the Iowa Civil Monetary Penalties Law, Iowa Code section 249A.47; or the common law theories of payment by mistake, unjust enrichment, breach of contract, and fraud.

26.    Subject to the exceptions in ¶ 27 (concerning excluded claims) below, conditioned upon the entry of the State Order, and conditioned upon the disbursements of the Disbursable Aggregate Settlement Amount pursuant to the provisions of ¶ 23 above, and subject to ¶ 37 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases CCI, together with its current and former parent corporations; direct and indirect subsidiaries; related corporations; divisions; current or former owners; directors, affiliates, and officers, agents, servants, and employees, except Defendant William M. Bonnes and Defendant Angela Ganzer-Bovitz; and the successors and assigns of any of them, from any civil monetary claim the Relator has on behalf of the United States or the State for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

27.    Notwithstanding the releases given in ¶¶ 24, 25 and 26 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.    Any criminal liability;

c.   Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

d.   Any liability to the United States or the State (or either of their agencies) for any conduct other than the Covered Conduct;

e.   Any liability based upon obligations created by this Agreement;

f.   Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; or

g.   Any liability of individuals (including current or former directors, officers, employees, agents, or shareholders of CCI) who receive written notification that they are the targets of a criminal investigation (as defined in the United States Attorneys' Manual), who are indicted or charged, or who enter into a plea agreement, related to the Covered Conduct.

28.   Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances. Conditioned upon Relator's receipt of the Relator Percentage described in ¶ 23, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States and the State, their agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Relator's Action or under the FCA or the State FCA, and from any claims to a share of the proceeds of this Agreement and/or the Relator's Action.

29.   CCI waives and shall not assert any defenses it may have to any judicial or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such judicial or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United

8

States concerning the characterization of the Estimated or Disbursable Aggregate Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

30.    CCI and the Receiver fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated); the State, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated); and the Relator, her attorney, and agents, employees, and servants working on her behalf, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated), that CCI and the Receiver have asserted, could have asserted, or may assert in the future against the United States, the State, and the Relator, related to the Covered Conduct and the United States', the State's, and/or the Relator's investigation and prosecution hereof.

31.    Neither the Maximum Aggregate Settlement Amount nor the Disbursable Aggregate Settlement Amount shall be decreased as a result of the denial of claims for payment now being withheld from payment by the State or by any Medicaid contractor, fiscal intermediary, carrier, or any state or federal payer, related to the Covered Conduct; and CCI agrees not to resubmit to the State or any Medicaid contractor, carrier, or any state or federal payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

32.    CCI agrees to the following:

a.    All of the following costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated

thereunder) incurred by or on behalf of CCI, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)   the matters covered by this Agreement;

(2)   the United States' and/or the State's audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)   CCI's investigation, defense, and corrective actions undertaken in response to the United States' and/or the State's audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)   the negotiation and performance of this Agreement;

(5)   the payment CCI makes to the United States and/or the State pursuant to this Agreement and any payments that CCI may make to Relator, including costs and attorney's fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.   Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by CCI, and CCI shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by CCI or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.   Treatment of Unallowable Costs Previously Submitted for Payment: CCI further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments

10

previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by CCI or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. CCI agrees that the United States, at a minimum, shall be entitled to recoup from CCI any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by CCI or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs on CCI or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States and/or the State to audit, examine, or re-examine CCI's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

33.    CCI agrees to cooperate fully and truthfully with the United States' and the State's investigation of individuals and entities not released in this Agreement. Upon reasonable notice, CCI shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights

and privileges of such individuals. CCI further agrees to furnish to the United States and to the State, upon their respective request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

34.   This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

35.   CCI agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

36.   The Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to CCI, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which CCI was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

37.   If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, CCI commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors

(a) seeking to have any order for relief of CCI's debts, or seeking to adjudicate CCI as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for CCI or for all or any substantial part of CCI's assets, CCI agrees as follows:

a.      CCI's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and CCI shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) CCI's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) CCI was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States, the State and/or the Relator; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to CCI.

b.      If CCI's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States and the State, on their own behalf and on behalf of the relator, at their sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against CCI for the claims that would otherwise be covered by the releases provided in ¶¶ 24, 25 and 26, above. CCI agrees that (i) any such claims, actions, or proceedings brought by the United States, the State and/or the Relator are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and CCI shall not argue or otherwise contend that the claims, actions, or proceedings of the United States, the State and/or the Relator are subject to an automatic stay; (ii) CCI shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States, the State,

and/or the Relator within twenty-one (21) days of written notification to CCI that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) the United States, the State, and/or the Relator collectively have a valid claim against CCI in the amount of $27,552,234, and the United States, the State, and/or the Relator may pursue this claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c.      CCI acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

38.      Upon disbursement of the Disbursable Aggregate Settlement Amount in the percentages set forth in ¶ 23 above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action as to CCI Defendant only, and not with respect to any claims against Defendant Bonnes and/or Defendant Ganzer-Bovitz, pursuant to Rule 41(a)(1).

39.      Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

40.      Each Party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

41.      This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Iowa. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

42.    This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

43.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

44.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

45.    This Agreement is binding on CCI's and the Receiver's successors, transferees, heirs, and assigns.

46.    This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

47.    All Parties consent to the disclosure of this Agreement, and information about this Agreement, to the public.

48.    This Agreement is effective on the date that it is approved by the Court ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 1/15/15          BY: _____
                            Daniel Spiro
                            Senior Trial Counsel
                            Commercial Litigation Branch
                            Civil Division
                            United States Department of Justice


                            Nicholas A. Klinefeldt
                            United States Attorney
                            Southern District of Iowa

DATED: 1/20/15          BY: _____
                            Richard L. Richards
                            Assistant United States Attorney
                            Southern District of Iowa
                            110 E. Court Avenue, Ste. 286
                            Des Moines, IA 50309
                            Tel.   (515) 473-9300
                            Fax.   (515) 473-9272
                            ATTORNEYS FOR THE UNITED STATES
                            OF AMERICA

**THE STATE OF IOWA**

Thomas J. Miller
Iowa Attorney General

DATED: 1/14/15        BY: _Amy Licht_____

Amy Licht
Assistant Iowa Attorney General
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
Tel.    (515) 281-6774
Fax.    (515) 281-7219
Email: alicht@dhs.state.ia.us
ATTORNEYS FOR THE STATE OF IOWA

17

**RELATOR**

DATED: 1/12/15

Jackie Scott
RELATOR

DATED: 1/12/15         BY: 

Matt J. Reilly
Eells & Tonvold Law Offices, PLC
1921 51st Street NE
Cedar Rapids, IA 52402
Tel.    (319) 393-1000
Fax    (319) 393-4000
Email: Matt@eells-tronvold.com
ATTORNEY FOR RELATOR JACKIE SCOTT

**DEFENDANT CCI**

DATED: 01/13/2015    BY: _____

Rian D. Waterman
Lane & Waterman LLP
220 N. Main St., Ste 600
Davenport, IA  52801-1987
Tel.    (563) 324-3246
Fax.    (563) 324-1616
Email: rianwaterman@l-wlaw.com
ATTORNEY-IN-FACT FOR DEFENDANT
COMMUNITY CARE, INC.

**RECEIVER**

DATED: 1-12-15          BY: _____

Chet A. Mellema
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
Tel.    (515) 5822
Fax.    (515) 246-5808
Email: mellema.chet@bradshawlaw.com
ATTORNEY FOR RECEIVER
MORRIS ANDERSON & ASSOCIATES, LTD